# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| EDWIN DEE TIMMONS,<br><br>Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Respondent. | Case No.: 1:17-cv-00403-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Petitioner Edwin Dee Timmons's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's denial of his application for Social Security Disability benefits for lack of disability. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On October 29, 2013, Edwin Dee Timmons ("Petitioner") protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning October 11, 2011. This claim was initially denied on February 20, 2014 and, again, on reconsideration on May 23, 2014. On July 23, 2014, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On January 21, 2016, ALJ David Willis held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Brad D. Parkinson, appeared and testified. Polly A. Peterson, an impartial vocational expert, also appeared and testified at the same January 21, 2016 hearing.

On July 21, 2016, the ALJ issued a Decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act. Petitioner timely requested

**MEMORANDUM DECISION AND ORDER - 1**

review from the Appeals Council and, on August 16, 2017, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely filed the instant action on September 28, 2017, arguing that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review, p. 2 (Dkt. 1). Specifically, Petitioner claims that "the ALJ failed to resolve an inconsistency between vocational expert testimony and the Dictionary of Occupational Titles, in that the single job listed as available for [Petitioner] . . . requires a reasoning level . . . that is above the residual functional capacity given by the ALJ." *See* Pet.'s Brief, pp. 2, 7-8 (Dkt. 17). Petitioner therefore requests that the Court either reverse the ALJ's decision and find that he is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id*. at pp. 8-9; *see also* Pet. for Review, p. 2 (Dkt. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The standard is fluid and

nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.     Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 3**

404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since October 11, 2011, the alleged onset date." (AR 30).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe

**MEMORANDUM DECISION AND ORDER - 4**

impairments: "degenerative disc disease of the lumbar spine status/post L4-5 fusion surgery with residual peripheral neuropathy, seronegative rheumatoid arthritis, [carpal tunnel syndrome], and depression." (AR 30).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 31-34).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. On this point, here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except he can lift/carry/push/pull 10 pounds occasionally and less than 10 pounds frequently; sit for 55 minutes at a time followed by 5 minutes of standing for a total of 6 hours in an 8-hour workday; stand for a total of

**MEMORANDUM DECISION AND ORDER - 5**

> 2 hours in an 8-hour workday; and walk for a total of 2 hours in an 8-hour workday. He can never crouch, crawl, or climb ropes, ladders, or scaffolds. He can occasionally stoop, kneel, and climb ramps or stairs. He can occasionally reach, handle, and finger. He cannot operate a motor vehicle as part of his employment. He can never be exposed to unprotected heights or moving mechanical parts, and he must avoid even moderate exposure to extreme cold, extreme heat, and vibration. He can perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work). He can make simple work-related decisions involving workplace changes or utilizing judgment. He can occasionally respond appropriately to supervisors, coworkers, and the public. In addition to normal breaks, he will be off-task 5 percent of every 8-hour workday (extra breaks for back-related pain and rest).

(AR 34).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Petitioner was unable to perform any past relevant work, but found that jobs exist in significant numbers in the national economy that Petitioner can perform, including "call-out operator." *See* (AR 42-43). Therefore, based on Petitioner's age, education, and RFC, the ALJ concluded that Petitioner "has not been under a disability as defined in the Social Security Act from October 11, 2011, through the date of this Decision." (AR 43) (internal citations omitted).

**B.    Analysis**

At step five of the sequential process, the ALJ has the burden of establishing, through the testimony of the vocational expert or by reference to the Medical-Vocational Guidelines, that the claimant can perform alternative jobs that exist in substantial numbers in the national economy.

**MEMORANDUM DECISION AND ORDER - 6**

*See Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th Cir. 2016); *see also Bruton v. Massanari*, 268 F.3d 824, 827 n.1 (9th Cir. 2001). When using the testimony of the vocational expert in the fifth step, "the [vocational expert] must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001).

The Commissioner "routinely relies" on the Dictionary of Occupational Titles ("DOT") "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); *see also Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the [DOT]."). Should an "apparent or obvious" conflict arise between a vocational expert's testimony regarding the claimant's ability to perform alternative jobs and the DOT's description of those jobs, the ALJ must ask the vocational expert "to reconcile the conflict" and must determine whether the vocational expert's explanation is reasonable before relying on the vocational expert's testimony. *See Guitierrez*, 844 F.3d at 807; *see also Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-49, *available at* 2000 WL 1898704). An ALJ may rely on vocational expert testimony that contradicts the DOT only insofar as the record contains persuasive evidence to support the deviation. *See Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Here, in assessing Petitioner's RFC, the ALJ stated that "[h]e can perform simple, routine, and repetitive tasks, but not at a production rate pace (e.g., assembly line work) [and] [h]e can make simple work-related decisions involving workplace changes or utilizing judgment." (AR 34). The ALJ concluded – relying on the vocational expert's testimony – that given his RFC, Petitioner could not perform his past relevant work as an automobile salesperson (DOT No. 273.353-010). *See* (AR 41-42).

**MEMORANDUM DECISION AND ORDER - 7**

At the January 21, 2016 hearing, an impartial vocational expert, Polly Peterson, testified that a claimant with Petitioner's RFC could perform alternative work in the economy as a call-out operator (DOT No. 237.637-014). *See* (AR 83-87). According to the DOT, a call-out operator requires "Level 3 Reasoning," which entails the following abilities: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DOT, App. C, *available at* 1991 WL 688702.[1] Based on Ms. Peterson's conclusion, the ALJ found that Petitioner could perform other work that exists in the national economy. *See* (AR 42-43).

Petitioner argues that a limitation to "simple, routine, and repetitive tasks" indicates he cannot perform an occupation that requires "Level 3 Reasoning," and therefore, there is an inherent inconsistency between his RFC and the requirements of "Level 3 Reasoning." *See* Pet.'s Brief, pp. 6-8 (Dkt. 17) (citing *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015)). Relatedly, Petitioner goes on to argue that the ALJ erred by relying upon Ms. Peterson's testimony without resolving the conflict between that testimony and the DOT. *See id.*

As a matter of law, an apparent conflict exists between (1) Petitioner's RFC limitation to "simple routine, and repetitive tasks" and (2) Ms. Peterson's testimony that a person with

---

[1] By comparison, "Level 2 Reasoning" and "Level 1 Reasoning" entail the following abilities:

> Level 2 Reasoning: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situation."

> Level 1 Reasoning: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."

DOT, App. C, *available at* 1991 WL 688702.

**MEMORANDUM DECISION AND ORDER - 8**

Petitioner's RFC could perform jobs requiring a "Level 3 Reasoning" under the DOT; the ALJ's failure to resolve the conflict constituted legal error. *See Zavalin*, 778 F.3d at 846-47 (ALJ erred by failing to resolve apparent conflict between claimant's RFC limitation to simple, routine, and repetitive work and jobs ALJ concluded claimant could perform, which DOT indicated required "Level 3 Reasoning"). Nevertheless, the ALJ's decision will not be reversed if the error was harmless. *See id*. at 846-48. Thus, the Court must determine whether the ALJ's failure to resolve the apparent conflict left "a gap in the record that precludes [the court] from determining whether the ALJ's decision is supported by substantial evidence." *Id*. at 846, 848.

In *Zavalin*, the Ninth Circuit examined the DOT definitions of the jobs identified by the ALJ and concluded that evidence that the claimant had graduated high school and did well in math class was insufficient to support a finding that the claimant could perform jobs requiring "Level 3 Reasoning." In reaching its decision, the court considered that the record showed that the claimant was found disabled as a child based on severe impairments including cerebral palsy, a learning disorder, and a speech impairment; had been enrolled in special education classes and in mainstream classes with accommodations for his impairments; received a modified high-school diploma due to his special education status; and had no past relevant work. *See id*. at 844, 847-48. Although acknowledging that the claimant's use of computers and video games might show that he was capable of performing those jobs, the court concluded that it could not rely on that evidence on appeal because the ALJ had not done so, and that even if such evidence were considered, there was "no indication of the extent or manner of [the claimant's] computer use, or the complexity of the video games" that would demonstrate the requisite reasoning ability. *See id*. at 848.

Unlike *Zavalin*, the record here is sufficient for the Court to conclude that the error was harmless. First, the ALJ specifically relied upon evidence demonstrating that Petitioner's mental

**MEMORANDUM DECISION AND ORDER - 9**

limitations associated with his depression were not so significant as to preclude occupations requiring "Level 3 Reasoning." *See* (AR 37) ("Southern Idaho Pain Institute records generally indicate the claimant had normal mental status exams from November 2011 through November 2013.") (citing (AR 667, 670, 673, 676, 681, 685, 688, 691, 696, 699, 704, 707, 710, 715, 723, 726-27, 730, 733, 736, 739, 741, 743)); *see also* (AR 37) (noting medication change from Effexor to Paxil in June 2014 and that, in May 2015, claimant's depression was "stable on Paxil") (citing (AR 809)); *id.* ("On exams, [Warren Dopson, M.D.] noted the claimant had unspecified depressive symptoms, but no mood swings, good memory, and full orientation" and "noted the claimant appeared distressed, but . . . had normal and positive affect.") (citing (AR 820, 827));[2] (AR 39) (referencing examining psychologist Jerry Doke, Ph.D.'s 2014 opinion that, despite claimant's depressive disorder, he "can manage his own funds and has no impairments in work-related mental activities such as understanding, remembering, sustaining concentration, persistence, interacting socially, or adaptability.") (citing (AR 776)); (AR 39) ("[Dr. Doke's] opinion is consistent with his psychological evaluation findings that the claimant demonstrated good abstract thinking, good calculation ability, adequate judgment, good information content, good memory, and full orientation.") (citing (AR775)).[3]

---

[2] The ALJ also considered Dr. Dopson's January 2016 Medical Source Statement in which he indicated that Petitioner's "depression limits cognitive function." (AR 38) (citing (AR 800)). However, in according the balance of the opinions expressed therein only "some weight," the ALJ noted that Dr. Dopson's assessments "are inconsistent with the claimant's treatment and evaluation records." (AR 38).

[3] However, in according only "some weight" to Dr. Doke's opinions, the ALJ pointed out that they were "not fully consistent" with Dr. Dopson's June 2014 treatment records demonstrating a successful adjustment in claimant's psychotropic medications to address his occasional uncontrolled symptoms. *See* (AR 39) (citing (AR 828)); *but see infra* (citing (AR 809) (indicating Petitioner's depression was "stable on Paxil" as of May 4, 2015)).

**MEMORANDUM DECISION AND ORDER - 10**

Second, unlike *Zavalin*, there is no evidence that Petitioner received child disability benefits, ever suffered from impairments such as cerebral palsy, ever had a learning disorder or speech impediment, or was ever enrolled in special education classes. *See* (AR 30); *see also* (AR 230) (Petitioner indicating that he completed 10th grade in 1985, received his GED in 1986, and never attended any special education classes); (AR 42-43) (considering Petitioner's "education" at fifth step of sequential process).

Finally, unlike *Zavalin*, Petitioner had previous work experience as an automobile salesperson. *See* (AR 41); *see also* (AR 56, 74). The DOT classifies this job as requiring "Level 4 Reasoning." *See* DOT No. 273.353-010, *available at* 1991 WL 672465.[4] "Even assuming that [Petitioner's] mental impairments diminished [his] work-related functional capacity after [his] alleged onset date, [his] ability to perform jobs requiring a higher reasoning level in the recent past suggests that [he] likely retains the ability to perform some Level 3 reasoning jobs." *Goldsmith v. Berryhill*, 2018 WL 1384461, *4 (C.D. Cal. 2018); *see also Watkins v. Comm'r of Soc. Sec.*, 2016 WL 4445467, *8 (D. Or. 2016) ("[Claimant's past relevant work] shows that Plaintiff has long-term past relevant work with a higher reasoning level than that adopted by the ALJ in its decision.") (citing *Musser v. Colvin*, 2015 WL 4460677, *7 (E.D. Cal. 2015) (holding ALJ's error was harmless where claimant's education and work experience demonstrated he was capable of "Level 3 Reasoning" despite RFC limiting him to simple routine tasks)).

---

[4] "Level 4 Reasoning" entails the following abilities:

> Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form.

DOT, App. C, *available at* 1991 WL 688702.

**MEMORANDUM DECISION AND ORDER - 11**

In short, the record contains persuasive, substantial evidence from which to conclude that Petitioner can perform the job of a call-out operator. Had the record aligned more with *Zavalin's* or been less developed than it is on the issue of Petitioner's actual level of intellectual functioning and corresponding ability to perform "Level 3 Reasoning," the ALJ's determination at step five of the sequential process would be more problematic. But, on this record, the ALJ's failure to resolve the conflict between Ms. Peterson's testimony and the DOT was harmless[5] – substantial evidence supports the ALJ's reliance on Ms. Peterson's testimony that Petitioner can work as a call-out operator, despite his RFC limiting him to simple, routine, and repetitive tasks.[6]

---

[5] Though finding harmless error here, the Court rejects any argument that Petitioner waived his claim by not raising it at the January 21, 2016 hearing. *See* Resp't Brief, p. 7 (Dkt. 18). "When there is an apparent conflict between the vocational expert's testimony and the DOT – for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle – the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846. The ALJ must ask the vocational expert whether his or her testimony conflicts with the DOT. *See Massachi*, 486 F.3d at 1153-54. If it does conflict, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id*. at 1153. "The Commissioner's waiver argument is contrary to the foregoing authority and the Court concurs with those California district courts that uniformly continue to reject it." *Barkzai v. Berryhill*, 2018 WL 3126093, *3 (S.D. Cal. 2018) (citations omitted).

[6] Petitioner also suggests that, with "no more than occasional reaching, handling, and fingering" limitations, a "significant erosion of the unskilled sedentary occupational base" takes place and that a finding of "disabled" generally follows. *See* Pet.'s Brief, p. 8 (Dkt. 17) (citing SSR 96-9p, *available at* 1996 WL 374185, *8). However, in such instances, an ALJ may put the question to a vocational expert "who may be asked to provide . . . [a]n analysis of the impact of the RFC upon the full range of sedentary work, which the [ALJ] may consider in determining the extent of the erosion of the occupational base." SSR 96-9p, *available at* 1996 WL 374185, *10. Here, this is what the ALJ did – he consulted with Ms. Peterson regarding the impact of Petitioner's reaching, handling, and fingering limitations; and Ms. Peterson listed call-out operator as an occupation that Petitioner could perform despite such limitations and gave the citation of the existence and number of jobs in such an occupation in the national economy. *See* (AR 85-87); *see also* Resp't Brief, pp. 9-10 (Dkt. 18) (citing *Caronia v. Colvin*, 2013 WL 5192904, *5 (N.D. Tex. 2013) ("Caronia correctly observes that the [vocational expert] did not testify as to how many occupations were eroded from the unskilled sedentary occupational base in light of Caronia's additional limitations. *Instead, the [vocational expert] testified that a person with Caronia's RFC could still perform the specific occupation of call-out operator, and*

## IV. CONCLUSION

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, even though such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decision is based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V. ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety, with prejudice.

DATED: March 19, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge

---

*the [vocational expert] provided the total number of jobs existing in Texas and in the national economy.*") (emphasis added).

**MEMORANDUM DECISION AND ORDER - 13**